IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

Matthew D. Rutledge:

42552 Kenneth Court

Hollywood, MD 20636:

**Plaintiff**

**PJM 06 CV 2 067**

vs:

Civil Action No.: _____

CHASE BANK USA, N.A., As successor in interest to

Bank One Delaware, N.A.,

President, CEO, and Director James (Jamie) Dimon:

270 Park Avenue

New York, NY 10017-2070:

**Defendant**

## INTRODUCTION

1.      Matthew Rutledge is a dedicated husband and father of two wonderful boys.  He is a decorated honorably discharged veteran who served in support of Operation Desert Shield/Storm.  After serving in the United States Air Force, Matthew earned a Bachelor of Science degree in Mechanical Engineering and continued to serve the United States Air Force as a Mechanical and Lead Engineer on projects that support United States Air Force Aerospace vehicles.

Matthew Rutledge since age 16 has carefully and meticulously maintained an unblemished credit record and purchased his first home in April 2002.  Matthew Rutledge is a model citizen that dedicates his

spare time as a T-ball coach, Pee-Wee Football Coach, Science Fair Judge, and guitar accompanist at his church.

2.      **As of a direct result of the Defendant's** participating in, and/or aiding and abetting, and/or giving substantial assistance to, the actions and course of Identity Theft, Matthew has lost his family home, employment, vehicles, and quality of life. He was forced to move across the country to unstable employment, currently unable to purchase a new family home due to the destruction of his credit rating, and has had serious medical conditions.

3.      "The American Dream" is the faith held by many in the United States of America that through hard work, courage, and determination one can achieve a better life for oneself, usually through financial prosperity. http://en.wikipedia.org/wiki/

Personal Finance: Owning a home is good for you—and society By Emily Brandon 24 February 2006

Owning a home is the classic American dream, and the economic benefits of homeownership are immense. Instead of paying rent to the man, you are buying something of your own that, like fine wine, may appreciate in value over the years. But there's more to owning a home than just your personal profit.

There are many ways in which homeownership is good for **society**. Among them:

**Kids do better.** The children of owners are more likely to graduate from high school than the children of renters. Owners' daughters are also less likely to become teen mothers. Researchers are not sure why this is so, but Joseph Harkness, an associate research scientist at the Institute for Policy Studies at John Hopkins University, says one plausible reason is stability: Homeowners are more stable residents, and stability is good for kids. Nearly one third of renters changed locations from 2002 to 2003, while only 7.4 percent of owners moved. "If you have a stake in the community, it probably does rub off on your

kids," says Richard Green, professor of real estate and finance at George Washington University. "They're going to think there's something worthwhile to finishing school."

**Communities prosper.** Homeownership gives individuals an incentive to invest in their local communities. Owners are more likely to vote in local elections, attend church, volunteer, and join nonprofessional organizations. "If one believes that knowledgeable civic participation—voting, participating in local decision making—improves community quality, then homeowners seem more likely to both participate and to know about their community," says Edward Glaeser, professor of economics at Harvard University and director of the Taubman Center for State and Local Government. Homeowners also take better care of their homes than renters and are more likely to garden. Owners remain in their homes longer than renters, so they have a much greater financial stake in their neighborhoods and will reap the financial gains of any appreciation in real estate. A large portion of the beneficial social effects of homeownership may be from the effects of staying in the same community for extended periods of time.

**It's healthier**. There is some evidence that homeowners report higher self-esteem and happiness than renters and even better physical health. "Homeowners tend to stay put longer, so they create more friendships and associations in the local neighborhood," says William Rohe, professor of city and regional planning at the University of North Carolina. "People have more extensive social support systems, and that has a potential positive impact on health." Part of the psychological comfort of owning a home is the option of tapping into housing equity in case of health emergencies. However, those positive effects can be lost if the owner is having difficulty meeting mortgage payments.

How far and wide these positive benefits extend is unclear. Researchers do not know whether the positive associations of homeownership are a function of actual homeownership and stable housing or a

factor of the higher income and higher education that many homeowners have. Homeowners' health can deteriorate rapidly if they fall behind on mortgage payments and their stress levels rise. Also, low-income homeowners can become tied to communities that have been hit with economic distress. As more lower-income people buy homes, many of them "are really going to be at the financial edge, and the social impact of home owning may be somewhat different for them," says Rohe.

## JURISDICTION AND VENUE

4.  This Court has all jurisdiction and venue over all causes of action asserted herein pursuant to the 28 U.S.C. Part IV Chapter 85 § 1332.

   **a)** The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

   **(1)** citizens of different States;

## IDENTIFICATION OF PARTIES

5.    Matthew D Rutledge, 42552 Kenneth Court, Hollywood, Maryland, 20636.

6.    CHASE BANK USA, N.A., As successor in interest to Bank One Delaware, N.A. 270 Park Avenue, New York, NY 10017-2070.

7.     Defendant is liable for participating in, and/or aiding and abetting, and/or giving substantial assistance to, the actions and course of business that is described herein.  The Defendant had a substantial role in the events, facts, and transactions set forth herein.

## STATEMENT OF FACTS

COMES NOW Matthew D. Rutledge, who does hereby file this Complaint for damages in excess of $75,000 based upon Defendant's violations of the Fair Credit Billing Act, the Fair Credit Reporting Act,

the Fair Debt Collection Practices Act, Negligence, and Harassment states as follows:

8.    Plaintiff, Matthew D Rutledge is a resident of St. Mary's County, Maryland.

9.    Defendant, CHASE BANK USA, N.A., As successor in interest to Bank One Delaware, N.A., is a bank and/or a collection agency doing business in the state of New York.

10.    No agreement whatsoever regarding the alleged account, exists between Plaintiff and Defendant and no agreement, contract or any other document was signed by Plaintiff.

11.    The alleged account application was not signed by or agreed to by Plaintiff, but was fraudulently opened as a result of identity theft and fraud on the part of Plaintiff's former employer in Florida, one Jeffrey Taylor, of which the Defendant is aware and has been written notice of for over one year as shown by the following documents:

12.    26 July 2004, Original application of fraudulent credit card.  MOTHER'S MAIDEN NAME, Home Phone, Length of Residence, Position, Length of Employment, Business Phone, Monthly Income, Housing Amount, and Authorized User are all incorrect.  Demonstrates negligence due to breach of duty and foreseeability with personal information already on file with existing 1992 account. Plaintiff has been a cardholder with the Defendant in good standing since 1992.

13.    21 September 2004, Thomas Morgan of Eglin Federal Credit Union contacted Plaintiff with evidence and/or proof of fraudulent check writing.

14.    5 October 2004, Plaintiff obtained an Equifax Credit Report – Discovering three (3) Fraudulent Accounts.

15.    5 October 2004, Plaintiff contacted Defendant via telephone disputing the validity of the account under the Fair Credit Billing Act. Plaintiff requested that defendant close the invalid account and delete

all references from the negative item on the plaintiff's credit reports if the Defendant was reporting anything.

16.    5 October 2004, Plaintiff sought medical attention as a direct result of Defendant's negligence. Plaintiff was diagnosed with high blood pressure and anxiety.   Plaintiff was prescribed the anti-depressant Paxil.

17.    29 July 2004, Letter to Plaintiff from Discover that states, "We recently received a credit card application containing your name and social security number.  It is our policy to verify information provided on the application.   However, our attempts to verify certain information have been unsuccessful." Therefore, we are unable to grant credit until further personal verification.

18.    **Monthly Statements of Activity demonstrating correlating/identical charges within fraudulent accounts. – Bank One/Bank of America/Chase Manhattan.  Bank of America accepted fraud claim with apologizes to Plaintiff's concerns and inconveniences.**

19.    7 October 2004, Affidavit of Forgery with Eglin Federal Credit Union. Included Plaintiff's signatures and forgery signatures on check advances of person responsible for account.

20.    8 October 2004, Police Report filed by Plaintiff with the Okaloosa County Sheriff's Department in Okaloosa County, Florida, charging Jeffery Taylor, Plaintiff's Direct Supervisor at place of employment, with felonies for Larceny, Fraud Impersonation – Use/Poss ID of another person without consent, and Fraud – Utter False Instrument.

21.    5 October 2004, Letter from Defendant to Plaintiff stating that after careful consideration, Defendant has decreased credit line on account ending in 1875 from fraudulent credit line of $26,400 to $18,800 for the following primary reasons: high balance owed on Bankcard accounts, raid increase in

revolving balances, and too many accounts opened recently. - Demonstrates knowledge of suspicious activity on account. Plaintiff has been a cardholder with the Defendant in good standing since 1992.

22.    8 October 2004, Letter from Defendant to Plaintiff acknowledging fraud claim and that Plaintiff's reasonable cooperation with Defendant's Request is essential to their investigation. – ORGANIZATIONAL/COMPANY TEMPLATE.

23.    12 October 2004, Letter from Defendant that Plaintiff is responsible for the balance on account. Signed M. Sheppard, Customer Security Operations. – ORGANIZATIONAL/COMPANY TEMPLATE.

24.    12 October 2004, Plaintiff began bi-weekly counseling sessions for the treatment of depression and anxiety as a direct result of Defendant's negligence.

25.    15 October 2004 Third party statements faxed to Defendant's Fraud Investigator, Mandi Sheppard, and 3 February 2005 for the second time, Attention Jessica Pozehl, verifying Jeffery Taylor's illegal and unethical activities.

26.    20 October 2004, Letter from Defendant that Plaintiff is responsible for the balance on account. – Signed M. Sheppard, Customer Security Operations. - ORGANIZATIONAL/COMPANY TEMPLATE.

27.    20 December 2004, Plaintiff's Complaint to the Delaware Better Business Bureau (BBB) regarding this purported account (first with First USA, then Bank One/British Airways, and then Chase Bank) setting forth fraud by Jeffery Taylor and putting credit card company on written notice of same.

28.    22 December 2004, Plaintiff sought medical attention as a direct result of Defendant's negligence.   Plaintiff was diagnosed with high blood pressure and anxiety.   Family Practitioner recommended continuation of depression and anxiety counseling sessions.

29.     27 December 2004, Plaintiff mailed Letter via USPS certified Mail as a second attempt of dispute to the Defendant. Plaintiff contested legal responsibility of account, Defendant never verified application with Plaintiff, excessive spending contrary to Plaintiff's 1992 account with Defendant, and that charges on account continued to accumulate after notifying Defendant via telephone on 5 October 2004 that account was opened fraudulently. Plaintiff enclosed Okaloosa County Police Report. **Plaintiff insisted no more collection phone calls from company due to harassment and that all further contact be in writing.**

30.     27 December 2004, via Plaintiff's letter USPS Certified Mail to Identity Trade Theft Commission.

31.     27 December 2004, Plaintiff's letter via USPS Certified Mail to Equifax.

32.     27 December 2004, Plaintiff's letter via USPS Certified Mail to TransUnion.

33.     27 December 2004, Plaintiff's letter via USPS Certified Mail to Experian.

34.     4 January 2005, Plaintiff filed an "Affidavit of Fraudulent Use" with Defendant stating once again that the account was opened fraudulently therefore the account in itself and all charges associated are fraudulent.

35.     3 January 2005, Plaintiff's Letter from Defendant's predecessor, Bank One, acknowledging receipt of Better Business Bureau of Delaware Complaint, Signed by Jessica Pozehl, Card Services Executive Office 1-847-488-6833.

36.     11 January 2005, Plaintiff mailed Letter to Defendant as a third (3rd) attempt of dispute, Attention Jessica Pozehl, Card Services Executive Office, from Plaintiff stating Plaintiff was a First USA card member since 1992. Jeffery Taylor fraudulently opened the British Airways account, closed the original account and proceeded to charge over $20,000 in a two (2) month time frame. Plaintiff's

history of account with Defendant demonstrates that there has never been excessive spending. Defendant did not verify Plaintiff's personal information that was already on file for the 1992 account, violating the duty element that clearly demonstrated negligence, therefore, not protecting Plaintiff from unreasonable risk of harm. Defendant's negligence violates the foreseeability of a criminal act.

37.    25 January 2005, Bank Of America letter stating the following: "Fleet Visa accounts ending 0800 and 8783. "This letter is in response to your inquiry filed with the Better Business Bureau, received in our office on January 12, 2005. We regret any inconvenience you may have incurred in your attempts to resolve this matter. Our records indicate that your fraud claim has bee accepted. You will not be held responsible for the above referenced accounts or the transactions that appeared on the accounts. Please be advised that instructions have been submitted to the three major credit reporting agencies to which Fleet reports account information to delete the above referenced accounts from your credit file." "The above referenced accounts are closed. We hope your concerns have been resolved to your satisfaction." Signed Monica Wooden, Office of the President, Credit Card Division.

38.   8 January 2005, Plaintiff acquired an Experian Credit Report – Defendant's account did not reference a dispute to fraudulent account after reporting it to Defendant. Per the Fair Credit Reporting Act, Section 623. Responsibilities of furnishers of information to consumer reporting agencies [15 USC § 1681s-2] (a) Duty of furnishers of information to provide accurate information. (3) Duty to provide notice of dispute.

39.   11 January 2005, Plaintiff's letter to Bank One/British Airways again explaining fraud of Jeffery Taylor and Plaintiff never signed application for this account or charged anything to it.

40.   9 February 2005, Plaintiff's letter via USPS Certified Mail to Equifax.

41.   9 February 2005, Plaintiff's letter via USPS Certified Mail to TransUnion.

42.   9 February 2005, Plaintiff's letter via USPS Certified Mail to Experian.

43.   11 February 2005, Police Report updating stating that Investigator James E Wells applied for warrant for grand theft on suspect Jeffery W. Taylor in said case.   Warrant was applied for after reviewing case with State Attorney James Parker.

44.   26 February 2005, Plaintiff acquired an Experian Credit Report – Defendant's account did not reference a dispute to fraudulent account after reporting it to Defendant.  Per the Fair Credit Reporting Act, Section 623. Responsibilities of furnishers of information to consumer reporting agencies [15 USC § 1681s-2] (a) Duty of furnishers of information to provide accurate information. (3) Duty to provide notice of dispute.

45.   02 March 2005, Posted date of Warrant for Jeffery William Taylor for Larceny by the Okaloosa County Sheriff's Office, Agency Case Number 0411961.

http://www3.fdle.state.fl.us/fdle/wpersons_res_detail.asp?item_seq=110541487

46.   2 April 2005, Plaintiff received a bill in the mail from Defendant. Plaintiff had no knowledge of any business relationship with the defendant.

47.   19 August 2005, Choice Point Report that resulted in loss of insurance coverage from State Farm Insurance Agency, Plaintiff has been a member of since 1988.  Letter states " The Consumer Credit information in this report was obtained from Equifax".

48.   2 November 2005, Plaintiff received a Collection Letter from NASF on behalf of Defendant. **The letter made no reference to the previous disputes filed by Plaintiff.**

49.   10 January 2006, Defendant filed a claim with the National Arbitration Forum with Mann Bracken, LLC, Attorneys at Law as their legal representation. 25 January 2006 Plaintiff filed an Objection to Arbitration and Request for Involuntary Dismissal. 1 February 2006, Defendant filed for a

Stay. 3 February 2006, Defendant filed for an Indefinite Stay. 12 April 2006, Plaintiff filed a Second

Objection to Arbitration and Request for Involuntary Dismissal. 1 May 2006, Honorable Arthur M.

Ahault, Arbitrator from National Arbitration Forum, dismissed the case with prejudice.  The order states

the following:

1.  That the Arbitrator is not persuaded by a preponderance of the evidence that the Respondent

    entered into an agreement with Bank One as opposed to Jeffrey Taylor.

2.  That the only evidence of an agreement is the use of the card.

3.  That it appears that Jeffrey Taylor fraudulently initiated the account.

4.  That the information and evidence submitted supports the issuance of an Order as stated.

50.    31 January 2006, Plaintiff mailed a dispute letter in response to the collection letter from

Attorney to Sam Streeter for Defendant. The Plaintiff exercised his rights under the Fair Credit Billing

Act, The Fair Debt Collection Practices Act and the Fair Credit Reporting Act. The Plaintiff disputed the

alleged debt. The Plaintiff requested proof that the debt is valid. The Plaintiffs requested that the

Defendants delete the disputed item from the credit reports of the Plaintiffs.

51.   2 February 2006, Plaintiff mailed a dispute letter in response to the collection letter from Attorney

to P. Scott Lowery for Defendant. The Plaintiff exercised his rights under the Fair Credit Billing Act,

The Fair Debt Collection Practices Act and the Fair Credit Reporting Act. The Plaintiff disputed the

alleged debt. The Plaintiff requested proof that the debt is valid. The Plaintiff requested that the

Defendant delete the disputed item from the Plaintiff's credit reports. **Plaintiff's response was to three**

**(3) attempts at collection after informing them of fraud.**

52.   Numerous accounts, Defendant called the Plaintiff, and attempted to collect on the disputed debt

without providing validation of the debt or mailing a copy of the validation demanded by the Plaintiff

via letter dated 27 December 2004. Defendant's employee/representative called Plaintiff and demanded payment on the disputed account(s). Defendant's employee/representative admitted receiving the previous dispute letters and said that he was calling to collect on the debt. Defendant's manager/employee/representative also acknowledged that the defendant had received the dispute letter(s) and that he was attempting to collect the disputed debt.

53.   Plaintiff's attempts to receive lines of credit and was denied by the following businesses as a result of Defendant violating Fair Credit Reporting Act:

1.   Sears - 10 April 2006.

2.   Ent Federal Credit Union - 9 June 2006.

3.   Best Buy - March 2006.

4.   Circuit City - March 2006.

5.   ESmartloan.com – 28 December 2004.

6.   Individualized BankCard Services – 15 October 2004.

7.   Lending Tree – 27 December 2004.

8.   Ameriquest Mortgage Company – 29 December 2004.

9.   Millennia Mortgage Corporation – 20 December 2004.

54.   Damages are the money a plaintiff is allowed to receive if the plaintiff can prove that the defendant caused the personal injury and is legally responsible for the resulting harm. Damages in negligence lawsuits can include (but are not limited to) compensation for:

- Injury suffered.

- Damaged or destroyed personal property.

- Medical and hospital bills.

- Harm to marital relations ("loss of consortium").

- Lost past and future earnings.

- Physical and emotional "pain and suffering".

If a defendant is found to have acted intentionally or maliciously, courts will order him, her, or a legal entity, to pay the plaintiff "punitive" damages. These types of damages are designed to punish the defendant and to discourage similar wrongful conduct by others.

55.   23 September 2003, the Identity Theft Resource Center (www.idtheftcenter.org) released its survey of the impact of identity theft on 173 known victims. To read the full survey, see:

www.idtheftcenter.org/idaftermath.pdf

**Survey findings include:**

Nearly 85% of all victims find out about their identity theft case in a negative manner. Only 15% of victims find out due to a proactive action taken by a business.

- The average time spent by victims is about 600 hours, an increase of more than 300% over previous studies.

- While victims are finding out about their cases earlier, it is taking far longer now than before to eliminate negative information from credit reports.

- A large majority of respondents indicates the opening of a credit card (73%) or takeover of a card account (27%) to be among crimes committed.

- The emotional impact of identity theft has been found to parallel that of victims of violent crime.

56.   Plaintiff's actual damages are as follows:

- Income $55,000 annual salary over 20 year period $1,433,588.81 – Increase conservative 2.7% annually.
- Legal Fees to Larry Kellar $5,460.00.
- Loss on sale of 40th Anniversary edition Corvette – sold for $8,400 when Kelly Blue Book value was $13,900 Difference $5,500.
- Medical costs incurred at Pattison Professional Counseling $2,075.
- Medical costs incurred at Crestview Medical Center $600.
- Sale of one Gibson Les Paul Guitar for $900, actual value $2000.
- Sale of one Ibanez Professional Guitar for $800, actual value $1500.
- Sale of family residence – May 2005 $199,900.
- Inability to obtain new purchase of home due to credit score - Loss of equity due to renting $22,400 to date.
- Alltel early termination fee $420.
- Moving expenses due to new employment location $3,558.
- Remodeling of rental property to make suitable for living.  Could not qualify for finished rental house due to credit score. $5718.54.
- Vehicle registration fees due to move $618.
- Verizon Activation Fee $35.
- Loss of Maltese family dog valued at $850 due to limitations of renting house with pets.
- Cadillac Interest Rate 3.99%.  Due to loss of credit score Avalanche Interest Rate 9.740%. Total Cost with higher interest rate $26,610.00 with 3.99% $24,303.60 Difference $2,306.40.

- Denied personal loan from Ent Federal Credit Union –Even with history of following personal loans:. 1996 loan for $2800, 2000 loan for Kawasaki Ninja $9300, 2002 loan for Corvette $15,000, 2003 personal loan for $11,000, 2003 loan for Cadillac $22,000.

- Time Spent on Identity Theft Case - 600*$34.95= $20,970.00.

- **Total Actual Damages are $1,705,799.75.**

57.   26 January 2005, the Better Business Bureau in conjunction with Javelin Strategy and Research released its Identity Theft survey as an update to the Federal Trade Commission's 2003 Identity Theft Survey Report. The full report is available online at

http://www.javelinstrategy.com/reports/2005IdentityFraudSurveyReport.html.

**Survey findings include:**

- Within the last twelve months, 9.3 million Americans were victims of identity theft.

- The total U.S. annual identity fraud cost remains essentially unchanged since [the FTC's] 2003 [results], at $52.6 Billion, an increase of 2.3% from the 2003 inflation-adjusted level of $51.4 Billion.

- Most thieves still obtain personal information through traditional rather than electronic channels. In the cases where the method was known, 68.2% of information was obtained off-line versus only 11.6% obtained online.

- Conventional methods such as through lost or stolen wallets, misappropriation by family and friends, and theft of paper mail are among the most common ways thieves gain access to information.

58.   HARRASMENT

Defendant attempted in violating the Fair Credit Billing Act, the Fair Credit Reporting Act, the Fair Debt Collection Practices Act, Negligence, and Harassment laws by reissuing account numbers for the Bank One 4417160300511590 account.   Defendant closed original account & issued BA 4226350101151875, then BA 4226350100000701, then BA 4226950000079216. This is an obvious and malicious attempt at harassing and collecting on a known fraudulent account.

Plaintiff received an average of three (3) phone calls per day at place of employment, home phone, and cellular phone as a result.

59. As a direct result of Defendant's negligence, Plaintiff will no longer be able to obtain credit lines from the six major credit institutions for means of mortgages, credit lines and/or cards, vehicle loans, etc. disrupting quality of life.  JP Morgan Chase recently acquired control of major financial institutions and demonstrates aspiration/company financial means of ability to expand further.

**FIRST CAUSE OF ACTION - VIOLATION OF THE FAIR CREDIT REPORTING ACT**

60.      Plaintiff re-alleges the allegations set forth in Paragraphs 1 through 59 hereinabove.

61.      Per the Fair Credit Reporting Act, § 623. Responsibilities of furnishers of information to consumer reporting agencies [15 U.S.C. § 1681s-2] (a) Duty of furnishers of information to provide accurate information. (3) Duty to provide notice of dispute. If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer.

62.      The Equifax, Experian and Trans Union credit reports of Plaintiff contain debts listed by Defendant, but do not reflect that the debt is disputed by the Plaintiff.  Plaintiff has made numerous written disputes to Defendant.

63.     Plaintiff has a credit score that is lower than it should be. This damages the Plaintiff's ability to obtain credit and/or at reasonable rates. Plaintiff cannot obtain a mortgage or line of credit and/or at the rate they would otherwise be able to obtain due to the damage caused by the willful and/or negligent actions and/or inactions of the defendant.

THEREFORE Plaintiff requests judgment against Defendant for damages of $1,000 plus costs and fees **and respectfully asks this Court for leave to move for punitive damages.**

## SECOND CAUSE OF ACTION - VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

64.     Plaintiff re-alleges the allegations set forth in Paragraphs 1 through 63 hereinabove.

65.     Defendant violated the Fair Debt Collection Practices Act. §809. Validation of debts [15 USC 1692g].

66.     Defendant, continued collection activity without mailing a copy of any verification or validation of the disputed debt to the consumer.

67.     According to the Fair Debt Collection Practices Act, § 813. Civil liability [15 USC 1692k], (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this title with respect to any person is liable to such person in an amount equal to the sum of:

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

68.     Plaintiff has a credit score that is lower than it should be. This damages the Plaintiff's ability to

obtain credit at reasonable rates. Plaintiffs cannot obtain a mortgage at the rate they would otherwise be able to obtain due to the damage caused by the willful and/or negligent actions and/or inactions of the defendant.

THEREFORE Plaintiff requests judgment against Defendant for damages of $1,000 plus costs and fees **and respectfully asks this Court for leave to move for punitive damages.**

## THIRD CAUSE OF ACTION - VIOLATION OF THE FAIR CREDIT BILLING ACT

69.   Plaintiff re-alleges the allegations set forth in Paragraphs 1 through 68 hereinabove.

70.   The defendant violated the Fair Credit Billing Act, § 161. Correction of billing errors.

71.   Per the Federal Trade Commission summary located at

http://www.ftc.gov/bcp/conline/pubs/credit/fcb.htm ...

A. The creditor may not threaten your credit rating or report you as delinquent while the bill is in dispute.

B. If the creditor determines that you owe a portion of the disputed amount, you must get a written explanation. You may request copies of documents proving you owe the money.

C. Any creditor who fails to follow the dispute procedure may not collect the amount in dispute, or any related finance charges, up to $50, even if the bill turns out to be correct. For example, if a creditor acknowledges your complaint in 45 days - 15 days too late - or takes more than two billing cycles to resolve a dispute, the penalty applies. The penalty also applies if a creditor threatens to report - or improperly reports - your failure to pay to anyone during the dispute period.

D. You can sue a creditor who violates the FCBA. If you win, you may be awarded damages, plus twice the amount of any finance charge - as long as it's between $100 and $1,000. The court also may order the creditor to pay your attorney's fees and costs.

72.     Plaintiff has a credit score that is lower than it should be. This damages the Plaintiff's ability to obtain credit at reasonable rates. Plaintiff cannot obtain a mortgage at the rate they would otherwise be able to obtain due to the damage caused by the willful and/or negligent actions and/or inactions of the defendants.

THEREFORE Plaintiffs requests judgment against Defendant for damages of $1,000 plus costs and fees **and respectfully asks this Court for leave to move for punitive damages.**

**FOURTH CAUSE OF ACTION – NEGLIGENCE**

73.     Plaintiff re-alleges the allegations set forth in Paragraphs 1 through 72 hereinabove.

74.     In a negligence lawsuit there are four primary elements that need to be addressed: duty, breach of duty, causation and damages.

1. The duty element is the legal requirement that the person being sued for negligence must adhere to a standard of conduct in protecting others from unreasonable risk of harm. It really is the legal obligation we have in our relationships with others. Different duties apply to different people. Each duty is applicable to the pertinent responsibility at hand.

2. Breaching that duty is the second element to a negligence lawsuit. The question to be asked is: Would a reasonable person in a similar situation have done the same thing as the person being sued? To come to that conclusion both an objective and subjective standards need to be considered.

The objective standard of breach of duty only considers a hypothetical person and what her or his reasonable behavior might be. The subjective standard considers the actual person being sued and if she or he thinks they acted reasonably in the matter at hand.

Professionals are held to a higher standard of care than the average person in society. These people take oaths in their professions and need to maintain that in their lives.

3. The causation of negligence is the third critical element of the lawsuit. Both actual cause and proximate cause are considered. Actual cause asks the question of whether the person being sued, the defendant, was the actual cause of injuries sustained by the person initiating the lawsuit, the plaintiff. Proximate cause looks at the issue of foreseeability. When considering the event that has happened, it is asked whether or not the injuries sustained were foreseeable or too remotely connected to the incident to even consider.

4. The final element of a negligence lawsuit is the damages being sought. Damages are what the plaintiff is seeking in recovering for the incident resulting from the negligent act. Compensatory damages are designed to compensate the plaintiff for actual costs incurred. Of those, there are general and special damages. General damages are that like monetary compensation for the injury sustained. Special damages involve extra items such as material possessions lost from the negligent act. Nominal damages can also be awarded when negligence can be proven but not an actual loss as a result of it. And finally, punitive damages are those with the intent to punish the defendant.

75.    Defendant already had Plaintiff's information on file with the existing 1992 account.  Plaintiff has been a cardholder with the Defendant in good standing since 1992. The Defendant issued the additional purported account without verification that the application information was correct and/or accurate. This demonstrates neglect on Defendant's behalf due to breach of duty and foreseeability with personal information already on file with existing 1992 account. (Duty, Breach of duty, and Actual cause/Foreseeability – Elements 1, 2 and 3 of negligence)

76.    Defendant had in their possession the police report that states that the state's attorney had reason to issue a warrant for arrest for Jeffery Taylor, Plaintiff's Direct Supervisor at place of employment, stating larceny & fraud impersonation. (Duty and Breach of duty - Elements 1 and 2 of negligence)

77.     Defendant's letter dated 24 January 2005 from Defendant's employee/representative Jessica Pozehl that states, "We must rely on information contained within your credit file to make business decisions." This demonstrates no investigation whatsoever into verifying who opened the account, and that the Defendant's business decision was based solely on the fact that the Plaintiff has an impeccable credit file.  Plaintiff already had an active account with Defendant.  BBB has evidence of increasing identity theft. (Company policies should evolve due to known criminal activity).  (Actual cause/Foreseeability – Element 3 of negligence)

78.     Title 15 U.S.C. § 1681h(e), which is part of the Federal Act, provides:

Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report **except as to false information furnished with malice or willful intent to injure such consumer.**

**Plaintiff does not allege Defendant willfully intended to injure Plaintiff but does allege "malice".**

**THEREFORE Plaintiff respectfully asks this Court for leave to move for punitive damages.**

## FIFTH CAUSE OF ACTION - PERMANENT INJUNCTION

**79.     Plaintiff re-alleges the allegations set forth in Paragraphs 1 through 78 hereinabove.**

**80.     The information contained in the Plaintiff's credit file is unauthorized and damaging.**

**81.     Without permanent removal of such inaccurate information, there is not remedy at law for**

**Plaintiff.**

**82.    Plaintiff's damages are irreparable unless all unauthorized and damaging information is permanently changed.**

**83.    Injunctive relief is provided by 15 USC § 1681.**

## JURY TRIAL DEMAND

84.    Plaintiff requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff asks judgment against Defendant as follows:

85.    Economic, special, and actual damages in the amount of $1,705,799.75.

86.    Damages for physical and emotional distress and pain and suffering.

87.    Costs of suit and attorneys fees.

88.    Exemplary and punitive damages where appropriate.

89.    Such other and further relief as this Court deems just and proper.


_____8 August 2006

Matthew D. Rutledge

42552 Kenneth Court

Hollywood, MD 20636

240-538-6643

(pro se)